Eastern District of Kentucky
FILED
OCT 04 2006
AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

CIVIL ACTION NO. 05-647-GWU

PEARL HUBBARD,            PLAINTIFF,

VS.        **MEMORANDUM OPINION**

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,         DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of her application for Supplemental Security Income (SSI). The appeal is currently before the Court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial review of Social Security disability benefit cases:

1. Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 C.F.R. 404.1520(b), 416.920(b).

2. Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3. Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to Step 4. If no, the claimant is not disabled. See 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.

1

4. Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. See 20 C.F.R. 404.920(d), 416.920(d).

5. Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6. See 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6. Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work? If yes, the claimant was not disabled. If no, proceed to Step 7. See 20 C.F.R. 404.1520(e), 416.920(e).

7. Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. See 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply. Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to

2

support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1)

3

whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford

or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency

may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Pearl Hubbard, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of organic mental disorders/borderline intellectual functioning, "status post major facial trauma resulting from all-terrain vehicle accident August 30, 2003," as well as "status post motor vehicle accident involving a four-wheeler in 1991" and a deformity of the back with chronic back pain. (Tr. 13). Nevertheless, based in part on the testimony of a vocational expert (VE), the ALJ determined that Mr. Hubbard retained the residual functional capacity to perform a significant number of jobs existing in the economy and, therefore, was not entitled to benefits.

At the administrative hearing, the ALJ had asked the VE whether a person of the plaintiff's age of 31 years and 8th grade education, but with borderline intellectual functioning and the necessity "to be given oral instructions as to work tasks," could perform any jobs if he were limited to "light" level exertion, and also had the following

non-exertional impairments. (Tr. 334). He: (1) could only occasionally push, pull, or use hand controls with his right upper extremity; (2) could no more than frequently push, pull, or use foot controls with his lower extremities; (3) could only occasionally climb, kneel, crouch, or crawl; (4) could no more than frequently reach our lift overhead with his right upper extremity; (5) should avoid concentrated exposure to extreme cold and vibrations; and (6) retained the mental capacity to perform simple, repetitive work tasks in a simple, routine work setting. (Id.). The VE responded that there were jobs that such a person could perform, including labor assistant, and entry-level inspecting/testing/sorting/grading jobs, and proceeded to give the numbers in which they existed in "local" as well as national economies. (Tr. 334-5).[1]

On appeal, this Court must determine whether the hypothetical factors selected by the ALJ are supported by substantial evidence, and that they fairly depict the plaintiff's condition.

Mr. Hubbard alleged disability due to right arm pain and becoming "easily aggravated." (Tr. 57). At the administrative hearing, he described having had a large number of accidents involving an all-terrain vehicle. The most recent accident was in August, 2003, and resulted in broken facial bones including his jawbone, and Mr. Hubbard stated that he now had pain in his shoulder and collarbone and needed to have his jaw and teeth fixed. (Tr. 321-2). He also had blurred vision in the left

---

[1] The "local economy" was not defined.

eye since the accident (but had not been to an eye doctor), intermittently had problems with his right ear that prevented him from hearing at all (Tr. 325) and had breathing difficulties, especially in hot weather (Tr. 324). He admitted smoking one pack of cigarettes a day, however. (Id.). Despite these physical problems, Mr. Hubbard testified that he could lift about 50 pounds, could stand 45 to 60 minutes, had no problem with his hands or fingers, was able to bend and stoop, and could walk for 20 to 30 minutes on level ground. (Tr. 322-3). He described his physical pain as becoming worse if he stood or sat for long periods of time, and stated that spent most of his time lying down rather than sitting, although he was able to sit for a couple of hours in a comfortable chair. (Id.). He was taking no prescription medications because he could not afford medical treatment. (Tr. 321). As far as his education was concerned, Mr. Hubbard stated that he went to the 8th grade in Special Education, and left school because he became tired of attending class, but was able to read simple things, do simple calculations, and write himself notes. (Tr. 317-18). His only job was as a janitor at a factory for a few months in the year 2000, but he was fired for sleeping on the job. (Tr. 318-19). He helped his family out with odd jobs, kept his trailer straight, and was able to take care of his personal needs. (Tr. 327-30).

Medical evidence in the transcript reflects an extensive history of all-terrain vehicle (ATV) accidents (e.g. Tr. 108,190,198, 200, 213, 219, 227). An accident in

1991 caused a fracture of the right clavicle and a questionable fracture of the C2 vertebra (Tr. 231-3), accidents in 1998 caused a cerebral concussion and a mild compression of the L-1 vertebra (Tr. 213, 219), accidents in 2001 caused fractures of facial bones and another loss of consciousness (Tr. 198, 200), and in August, 2003 Mr. Hubbard was airlifted to the University of Kentucky Medical Center (UKMC) after he rolled an ATV while riding without helmet and the handlebars hit him in the face (Tr. 108). He had multiple bony and soft tissue fractures in his face, but his cervical spine did not show any fractures and Mr. Hubbard was neurologically intact. (Id.). He was diagnosed with a bilateral "Le Fort II fracture," left frontal sinus fracture, dental alveolar fracture, and facial lacerations, and discharged to be treated in an outpatient setting with instructions to limit his physical activity on an "as tolerated" basis. (Tr. 108-111).[2] There is evidence of one subsequent physician visit on September 3, 2003, at which time Mr. Hubbard was complaining of facial pain and reported that he could not get his pain prescription from UKMC filled locally. (Tr. 180). The physician noted that Mr. Hubbard's lower teeth were wired and that he appeared to be in mild to moderate distress, and prescribed medication. (Tr. 180).

However, no specific permanent functional restrictions are given by any treating source.

---

[2] A "Le Fort II fracture" is a "fracture of the maxilla, in which the body of the maxilla is separated from the facial skeleton and the separated portion is of pyramidal shape." Dorland's Illustrated Medical Dictionary, 27th Ed., p. 661.

Dr. Mark Burns conducted a consultative examination of the plaintiff in February, 2004, and although he apparently had no records to review and had an incomplete history, believing that the plaintiff had had only one ATV accident in 1997, his physical examination was considered normal, and he found no restrictions in the plaintiff's ability to perform any activities. (Tr. 284-7). A state agency physician who reviewed the evidence following this examination concluded that the plaintiff did not even have a "severe" impairment. Although Dr. Burns may not have conducted a searching evaluation, there are unfortunately no conclusions from any medical source of greater limitation. Therefore, the physical hypothetical factors are supported by substantial evidence.

The plaintiff submits on appeal that the ALJ did not properly evaluate his complaints of disabling pain, citing <u>Duncan v. Secretary of Health and Human Services</u>, 801 F.2d 847, 853 (6th Cir. 1986). However, an examination of the ALJ's decision shows that the subjective and objective factors given in <u>Duncan</u> were adequately considered. (Tr. 16-17). Certainly, Mr. Hubbard's description of his ability to perform physical activities (Tr. 322-3) does not suggest that he was more limited by pain than found by the ALJ.

The plaintiff's other arguments on appeal concern his educational and intellectual functioning.

The plaintiff submits that his illiteracy was not cited in the hypothetical question, but the ALJ clearly instructed the VE to assume that the hypothetical individual would require oral job instructions. Therefore, this argument is without merit.

The plaintiff also asserts that the ALJ should have found him to have mild mental retardation, based on school records of special education with poor grades, poor test scores in school, and the recent consultative evaluation of Phil Pack, a psychologist. School records do contain IQ testing at the age of 10, which produced a full-scale IQ score of 87, and it was also noted that the previous evaluation showed a full-scale IQ score of 81. (Tr. 106). To the extent that IQ testing at such an early age has current relevance, the scores do not suggest mild mental retardation. Mr. Pack's 2004 testing showed a verbal IQ score of 73, a performance IQ score of 68, and a full-scale IQ of 68, but he opined that these results might be a slight underestimation of the plaintiff true abilities due to his apparent impulsive test taking behavior. (Tr. 278, 281). His diagnosis was mild mental retardation "on today's testing," but "more probable" borderline intellectual functioning. (Tr. 282). Mr. Pack felt that the plaintiff would have a "fair" (defined as "limited but satisfactory") ability to understand, retain, and follow instructions and to sustain attention to perform repetitive tasks, and a "good" (defined as "more than satisfactory") ability to relate to others including fellow workers and supervisors and adapt to distress and

12

Hubbard

pressures of day-to-day work activity. (Tr. 282-3). A state agency psychologist who reviewed the record, Dr. Jay Athy, concluded that Mr. Hubbard did have estimated borderline intellectual functioning (Tr. 290-1), but would be "moderately limited" only in his ability to understand, remember, and carry out detailed instructions, to maintain attention concentration for extended periods and to respond appropriately to changes in the work setting. (Tr. 304-6). Therefore, there was no clear diagnosis of mild mental retardation at any point. The hypothetical factors given by the ALJ are not inconsistent with those given by the examining psychologist.

The decision will be affirmed.

This the ____ day of October, 2006.

_____
G. WIX UNTHANK
SENIOR JUDGE